## PETERS *v.* PIKE.

PATENTS; INTERFERENCE; CONCEPTION AND DISCLOSURE; MECHANICAL SKILL.

1. Uncorroborated testimony of the junior party to an interference as to disclosure is insufficient.

2. In an interference case involving the invention of an improvement in adding machines, where the burden was upon the junior party to show disclosure prior to the filing date of the other party, the evidence was reviewed and it was *held* that the testimony of one of the witnesses for the junior party was insufficient to fix the date of the alleged disclosure clearly; that that of another of his witnesses failed to show that when the alleged disclosure was made the junior party was in the possession of anything more than the conception of a result which he wished to accomplish; and that the testimony of a third witness for him did not show that the alleged disclosure to him was of the invention of the issue.

3. Where the senior party to an interference, to meet the contention of the junior party that a machine constructed in accordance with the description in his application would be inoperative, built and successfully operated a machine corresponding to such description, save in one particular, a decision of the Commissioner of Patents that the change made required only the skill of a mechanic was, upon a review of the evidence, *affirmed.*

No. 531. Patent Appeals. Submitted November 17, 1909. Decided March, 3, 1909.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.      *Affirmed.*

The facts are stated in the opinion.

*Messrs. Rector, Hibben, & Davis* for the appellant.

*Mr. Charles E. Foster* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding affirming the decision of the Board of Examiners-in-Chief, which, in turn, affirmed the decision of the Examiner of Interferences, awarding judgment of priority to appellee, William Henry Pike, Jr.

This invention relates to improvements in adding machines of the Burrough's type. In the machines as placed upon the market prior to this invention, if the operator desired to strike a total of the amount that had been printed, a special key was depressed, and the handle of the machine pulled forward, whereupon the total would be printed on the strip of paper at the foot of the list. If the key was held down, not only while the operating handle was on its forward stroke, but until it returned to its normal position, the adding wheels returned to zero, or in position for the printing of another column of numbers. When it became necessary to carry the total forward for further items to be added to it, or, in the language of the trade, obtain a subtotal, this was accomplished by releasing the special key before the operator released the handle. It will be observed that the striking of a subtotal involved caution on the part of the user to release the special key at just the proper time. It was to obviate this difficulty that the invention in interference was conceived. A special key was provided to obtain a subtotal which need not be released in the middle of the operation, but, like the original total key, it would remain depressed through-

out the operation of the machine. The issue is embodied in the following counts:

"1. In a machine of the class described, the combination with the register actuating racks and the register normally in engagement with said racks, of the main shaft, connections from the main shaft adapted to normally disengage and re-engage the register and racks while accumulating amounts, means controlling said connections for taking the totals, and independent means for rendering said connections inoperative to disengage the register from the racks while taking subtotals.

"2. In a machine of the class described, the combination with the register actuating racks and the register normally in engagement with said racks, of the main shaft, connections from the main shaft adapted to normally disengage and re-engage the register and racks while accumulating amounts, means controlling said connections for making the totals, and a key which, when pressed in, renders said connections inoperative to disengage the register from the racks while making subtotals.

"3. In a machine of the class described, the combination with the register actuating racks and the register normally in engagement with said racks, of the main shaft, mechanism operated by the main shaft for normally disengaging and re-engaging the racks and register while accumulating amounts, and a subtotal key adapted to disconnect said mechanism from the main shaft.

"4. The combination with the forked pitman and reciprocating arm and connections, of a controller adjustable to put the pitman into and out of operative connection with the arm.

"5. In a machine of the character described, the combination with the forked pitman, oscillating arm and its pawl, and three armed lever 913, of means adjustable to put the arm and pitman into and out of operative connection.

"6. In a machine of the character described, the combination with the forked pitman, of devices for reciprocating the same, and a controller adjustable to render said devices operative or inoperative on the pitman."

Appellee filed his application on August 5, 1904, while ap-

pellant, Heber C. Peters, did not file his application until April 29, 1905. It will thus be seen that appellant comes here not only with the weight of the decision of the three tribunals of the Patent Office against him, but also with the burden cast upon him as the junior party to this interference.

No testimony was taken by appellee. He relies on the filing of his application for the date of his conception and reduction to practice.

The sole question before us is whether the evidence is sufficient to overcome appellee's prior filing date. Appellant claims to have conceived the invention in issue and disclosed it to one Conkling, his office assistant, to one Schiffling, a mechanical inspector for the Burroughs Adding Machine Company, and to one Tripp, a draftsman, during the first week of July, 1904, while examining a copy of a patent granted to appellee on June 28, 1904. His evidence on this point is indefinite, and it is not clear whether the subtotaling device had been conceived by appellant at that time, or whether the testimony related to an automatic totaling device, an invention entirely distinct from the subtotaling device of the issue. Considering his evidence in the most favorable light, it is necessary that it be corroborated by the testimony of one or more of the persons to whom he claims to have disclosed this invention.

The evidence of Miss Conkling is characterized by that uncertainty and indefiniteness which pervades the whole record. An examination of her testimony fails to fix the date of the disclosure of the invention in issue prior to August 5th, appellee's filing date. Upon being asked to state what had taken place during her employment concerning the inventions of appellant, she replied, "During that time Mr. Peters made a number of inventions, among them the automatic totaling device, and others." She then fixed the date of the disclosure of the automatic totaling device as in the early part of July, 1904. This date is fixed by relation to a trip which she says she made to the factory in June. The following question was then asked: "Please state, as near as you can recall, just what Mr. Peters explained to you at that time with reference to this invention."

In reply she described the structure involved in the automatic totaling device. This answer, we think, casts a serious doubt upon the contention that the device here in issue was disclosed at that time. The following question and answer then appear: "Q. What, if anything, did Mr. Peters claim about the taking of a subtotal?" "A. Naturally, that was the first question asked in the office, and he explained to us that, by interfering with the normal action of the 821, as the machine was automatically arranged, the 821 would be thrown out of mesh with the 961 stud, on the three-cornered part, which rocks backward and forward co-operatively with the operation of the 934, or pitman." We agree with the Commissioner when he says: "This answer contains the most definite statement found in the testimony of Miss Conkling as to the date of the disclosure to her of the subtotaling device of the issue. The fact that the matter of taking a subtotal was 'naturally * * * the first question asked in the office' does not warrant the conclusion that the disclosure took place prior to August 5, 1904, the filing date of Pike." It does not follow that the means for subtotaling was disclosed on the same date the automatic totaling device was disclosed. This testimony must be considered in connection with the other evidence in the record, which tends to establish this disclosure, if, in fact, one was made at all, subsequent to that date. It will also be noted that this witness was not aware of any specific means by which the normal action of the pawl could be interfered with.

The witness Schiffling testified that appellant explained to him the device for automatically taking a total, and also showed him a sketch of the same. As to the subtotaling device, he said: "Mr. Peters, in his sketch shown me, illustrated only the idea of the automatic total, but stated that a separate device would be necessary to take a subtotal. He explained this could be done very easily by interfering with the action of 821 on the 913. He illustrated this by using a lead pencil on the 821, preventing it from operating the 913." He fixes the date of this disclosure as prior to a vacation which he took from August 5th to August 13th. This testimony, while more definite

as to the date than that of Miss Conkling, is also open to the objection that it fails to show that appellant was in possession of anything more than the conception of a result which he wished to accomplish.

It appears from the record that appellant disclosed to the witness Tripp the automatic totaling device, and also the idea "of taking a subtotal through the operation of the error key." There is, however, a failure to establish the date of this disclosure prior to the filing of appellee's application. This witness was instructed by appellant to make working drawings of the invention disclosed to him. These drawings were begun on September 8, 1904, and finished on the 22d of the same month. Tripp also testified that appellant first approached him on the subject about two weeks prior to his beginning work on the drawings, which was more than a month subsequent to appellee's filing date. After the completion of the drawings, a machine, which is in evidence, was built therefrom. It is self-evident, from an examination of the drawings and the machine, that either appellant had not conceived the invention in issue, or, having conceived it, had not disclosed it to Tripp, for neither the drawings nor the machine contain means for taking a subtotal.

It must, therefore, be held, on this branch of the case, that appellant has failed to overcome the heavy burden resting upon him.

It is contended by counsel for appellant that a machine constructed in accordance with appellee's application would be inoperative, and, therefore, appellee is not entitled to make the claims of the issue. To prove that such contention is incorrect, a machine was built and offered in evidence, which corresponds to appellee's disclosure except that the slot in the pitman, instead of being L-shaped with straight edges, is made with the lower branch of the slot slightly curved. This change renders the device operative, preventing the camming action found to take place in the construction shown by the original disclosure. All three tribunals of the Patent Office held that the change

made required only the skill of the mechanic, and we are not disposed to overrule their judgment on this question.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required. *Affirmed.*